IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:12cr151 MOC |
| | ) | |
| | ) | **SUPERSEDING** |
| v. | ) | **BILL OF INFORMATION** |
| | ) | |
| THOMAS HAZLETT (1) | ) | Violations: |
| DOUGLAS MILLSAPS (2) | ) | 18 U.S.C. § 371 |
| | ) | |

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At the specified times and all relevant times:

## INTRODUCTION

1. Beginning no later than July 1, 2006, and continuing through at least on or about December 31, 2007, in and around Mecklenburg County, within the Western District of North Carolina, and elsewhere, THOMAS HAZLETT ("HAZLETT") and DOUGLAS MILLSAPS ("MILLSAPS"), defendants herein, and persons known and unknown to the United States Attorney, devised and executed schemes and artifices to defraud and to obtain money, funds and credits from federally insured financial institutions and a private residential lender in order to sell certain residential real estate in and around McKee Road, Charlotte, North Carolina ("McKee Road"); thereby causing losses to said financial institutions and private lender in excess of $1.28 million through a mortgage fraud scheme.

**Pertinent Individuals and Entities:**

2. Persons known to the United States as PD and AD were real estate investors who did business as Ynot Enterprises Inc. PD and AD purchased land on McKee Road which they subdivided into three lots that became 4608, 4614, and 4620 McKee Road.

3. HAZLETT, a residential builder of homes who did business as Hazlett Homes Inc. ("Hazlett Homes"), contracted to develop and build homes on all three McKee Road lots.

4. A person known to the United States Attorney as TB acted as promoter in the scheme. In exchange for an undisclosed fee paid to a third party, TB provided buyers to MILLSAPS for the purchase of 4608 and 4620 McKee Road.

5. MILLSAPS was a real estate agent licensed by the State of North Carolina who did business as Millsaps Realty LLC. Although MILLSAPS was not the listing agent for the

sale of the McKee Road properties, his role in the scheme was to arrange for buyers to purchase the McKee Road properties. In exchange, MILLSAPS would receive a commission at the close of the sale. MILLSAPS knew and agreed that the investors that TB introduced to HAZLETT would receive an undisclosed fee for producing a buyer to purchase each of the McKee Road properties.

6. Gregory D. Anderson ("Anderson"), an unindicted co-conspirator herein, purchased 4614 McKee Road from PD and AD in exchange for an undisclosed kick-back paid by MILLSAPS, PD and AD.

7. Washington Mutual Bank (WaMu) was a savings and loan bank and a financial institution whose deposits were insured by the Federal Deposit Insurance Corporation (FDIC). WaMu provided Anderson with a loan secured by 4614 McKee Road.

8. National City Bank (National City) was a saving and loan bank and a financial institution whose deposits were insured by the FDIC. National City provided the buyers who purchased 4620 McKee Road with a loan secured by that property.

9. Stearns Lending, Inc. was a privately held lender located in California that provided the purchaser of 4608 McKee Road with a loan to purchase 4608 McKee Road secured by that property.

**The Mortgage Fraud Scheme:**

10. In and around 2004, PD and AD purchased land on McKee Road which they subdivided into three lots that became 4608, 4614, and 4620 McKee Road. PD and AD sold 4608 and 4620 McKee Road to HAZLETT. They received a construction loan to renovate an existing house located at 4614 McKee Road. HAZLETT received a construction loan to build the houses located at 4608 and 4620 McKee Road. PD and AD were to keep any profit on 4614 McKee Road and HAZLETT was to keep any profits from the sale of 4608 and 4620 McKee Road.

11. Beginning in and around November 2004, HAZLETT began building and renovating homes on the McKee Road lots. The costs of the homes increased greatly due to unexpected costs in the development and construction of the properties. In late 2005, the homes were listed for sale by a licensed real estate broker at prices between about $600,000 and $689,000. By 2006, however, the homes had not sold. HAZLETT had invested his own funds to complete the house at 4614 McKee Road. Because HAZLETT, PD and AD were still paying the construction loans on these properties, they were desperate to sell these homes in 2006.

12. In and around July 2006, HAZLETT was introduced to MILLSAPS and TB. They agreed to find an "investor" to purchase each of the McKee Road properties for their asking price if HAZLETT, PD and AD would pay them a commission and a kickback to the investors. The commission and kickbacks would be paid by inflating the price of the homes by the amount of the commissions and kickback. The investors would purchase

2

the homes at the inflated prices and the commissions and kickbacks would be paid through payments to undisclosed third parties, an inflated commission to MILLSAPS and credits on future Hazlett Homes' projects.

**Acts In Furtherance Of The Mortgage Fraud Scheme:**

13. On or about September 20, 2006, HAZLETT sold 4620 McKee Road to an individual for $770,000. The purchase funds came from loans from National City obtained through false and fraudulent pretenses, representations and promises including that the buyer did not qualify for the loans, the value of the property was inflated and that TB was receiving the benefit of a kickback of approximately $140,000 from the loan proceeds. The kickback was paid by HAZLETT in the form of seven $20,000 checks to a church controlled by TB.

14. On or about October 30, 2006, PD and AD sold 4614 McKee Road to Gregory Anderson for $824,000. The purchase funds came from loans from WaMu obtained through false and fraudulent pretenses, representations and promises including that Gregory Anderson did not qualify for the loans, the value of the property was inflated and that he would receive a kickback of approximately $135,000 from the loan proceeds. This kickback was disguised on the HUD-1 settlement sheet as a commission to MILLSAPS in the amount of $115,000 or 11% of the sales price. MILLSAPS paid Gregory Anderson approximately $100,000 from the disclosed commission after the loan closed. PD and AD paid ANDERSON $35,000 at the loan closing.

15. On or about November 14, 2006, HAZLETT agreed to sell 4608 McKee Road through an investor in California known to the United States Attorney as MV for $670,000. MV was introduced to HAZLETT by TB. MV provided an individual to buy 4608 McKee Road in exchange for a portion of the profits in homes that Hazlett Homes planned to build in 2007. The purchase funds came from a loan from Stearns Lending, Inc. (Stearns) obtained through false and fraudulent pretenses, representations and promises including that the value of the property was inflated and MV would receive a kickback of approximately $176,000 from the profits of Hazlett Homes sales in 2007. Stearns originated the loan which was funded through wire transfers from Stearns' warehouse credit line at Countrywide Federal Savings Bank, a savings and loan bank and financial institution whose deposits were insured by the FDIC. These wire transfers transmitted the funds via interstate wire transmissions from California to North Carolina.

# COUNT ONE

Violation: 18 U.S.C. § 371
(Conspiracy)

16. Beginning on or about July 1, 2006 and continuing through on or about December 31, 2007, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendants,

**THOMAS HAZLETT (1) and
DOUGLAS MILLSAPS (2)**

did knowingly conspire and agree with each other and others known and unknown to the United States Attorney, to commit bank and wire fraud in violation of Title 18, United States Code, Sections 1344 and 1343.

## MANNER AND MEANS OF THE CONSPIRACY

17. The defendants and their co-conspirators carried out the conspiracy in the manner and means described in paragraphs 1 through 15 of this Superseding Bill of Information, among others.

## OVERT ACTS

18. In furtherance of the conspiracy, and to accomplish the objects thereof, the defendants committed one or more of the overt acts described in paragraphs 13 through 15 of this Superseding Bill of Information.

All in violation of Title 18, United States Code, Section 371.

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

19. Notice is hereby given of the provisions of 18 U.S.C. §982 and 28 U.S.C. §2461(c). Under §2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. §981 and all specified unlawful activities listed or referenced in 18 U.S.C. §1956(c)(7), which are incorporated as to proceeds by §981(a)(1)(C). The defendants have or had a possessory
or     legal interest in the following property that is subject to forfeiture in accordance with §982 and/or §2461(c):

   a. all property involved in the violations alleged in this Superseding Bill of Information;

   b. all property which is proceeds of such violations; and

c. in the event that any property described in (a) or (b) cannot be located or recovered or has been substantially diminished in value or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant, to the extent of the value of the property described in (a) and (b).

20. The following property is subject to forfeiture based on one or more of the grounds stated above: all currency and monetary instruments which were received during, involved in or used or intended to be used to facilitate the crimes alleged in this Superseding Bill of Information, including but not limited to the sum of approximately $1.28 million in proceeds.

ANNE M. TOMPKINS
UNITED STATES ATTORNEY

*/s/ Jennifer Lynn Dillon*

JENNIFER LYNN DILLON
MICHAEL E. SAVAGE
ASSISTANT UNITED STATES ATTORNEYS